# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | |
|---|---|
| MOHAMMAD JABBAR, M.D., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, and DOUG COLLINS, in his capacity as Secretary of the United States Department of Veterans Affairs, <br><br><br> Defendants. | Case No. |

## COMPLAINT FOR JUDICIAL REVIEW

Plaintiff, Mohammad Jabbar, M.D., by and through his attorneys, Goldberg Law Group, LLC, pursuant to 5 U.S.C. §§ 701-706, brings his Complaint for Judicial Review against the United States Department of Veterans Affairs and its Secretary, Doug Collins. In support thereof, Plaintiff hereby states as follows:

### INTRODUCTION

1. This is an action for judicial review of the final administrative decision dated September 22, 2025 of the United States Department of Veterans Affairs revoking Dr. Jabbar's clinical privileges ("Final Decision") at the Marion VA Healthcare System. *See* **Exhibit A,** a true and accurate copy of the Final Decision.

2. Dr. Jabbar seeks judicial review of the decision as it is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and was obtained without procedures required by law, rule or regulation.

3. Dr. Jabbar seeks declaratory and injunctive relief, attorney's fees and costs, and for his professional record be cleared.

1

## THE PARTIES

4. The Plaintiff, Mohammad Jabbar, M.D. ("Dr. Jabbar" or "Plaintiff"), is a medical doctor and general surgeon licensed to practice medicine in the State of Florida. Dr. Jabbar has been licensed in Florida since 1977 and his license has been in good standing at all times.[1]

5. The Defendant, United States Department of Veterans Affairs (the "VA") by the United States Attorney General, Pamela Bondi, has its office in Washington D.C. The VA is an executive agency of the United States government.

6. The Defendant, Doug Collins, the Secretary of the Department of Veterans Affairs (the "Secretary"), has his office in Washington D.C.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this mater pursuant to 28 U.S.C. §1331 and 5 U.S.C. §§ 701-706.

8. The Southern District of Illinois, East St. Louis Division is the proper venue for this action pursuant to 28 U.S.C. §1391(b)(2) in that a substantial portion of the events giving rise to Plaintiff's claims occurred within this district and division.

## FACTUAL BACKGROUND

9. Since 2001, Dr. Jabbar has been employed as a general surgeon at the Marion VA Medical Center ("Marion VA" or "Hospital"), which is operated by the Marion VA Healthcare System.[2]

10. Dr. Jabbar's clinical privileges were revoked effective August 19, 2024.

---

[1] In order to practice medicine at a VA facility, a practitioner is only required to have a valid and active license in at least one state.
[2] Dr. Jabbar voluntarily retired in good standing from the Marion VA on September 30, 2025. Dr. Jabbar's employment with the VA is not at issue for the purpose of this Complaint for Judicial Review.

11. From 2001 through August 2024, Dr. Jabbar's clinical privileges at the Hospital were in good standing and his privileges to admit and treat patients were routinely renewed every two years based upon the recommendation of the Medical Staff and approval of the Hospital's Board of Directors.

12. On or around May 16, 2024, the Executive Director of the Marion VA ("Director"), Zachary Sage, initiated an investigation due to his concerns regarding Dr. Jabbar's "colonoscopy procedures documentation and follow up."

13. On or around August 19, 2024, Dr. Jabbar received a letter from the Director, summarily suspending his clinical privileges effective immediately due to clinical care concerns. (hereinafter, the "Summary Suspension Notice"). A summary suspension is a pre-hearing deprivation of a physician's clinical privileges, and a physician cannot practice medicine at the hospital that summarily suspends his or her clinical privileges. The physician is however, entitled to an expedited hearing.

14. The Summary Suspension Notice provided that the investigation will be completed as expeditiously as possible with the goal to accomplish it within thirty (30) calendar days.

15. During the course of the investigation, the summary suspension of Dr. Jabbar's clinical privileges was improperly extended five different times from September 18, 2024 through January 7, 2025, without his consent or input.

16. The Medical Staff of the Marion VA has adopted bylaws outlining requirements and procedures for their governance and operations known as the Veterans Health Administration (VHA) Medical Center – Marion, Illinois – Bylaws, Rules and Regulations of the Medical Staff (hereinafter the "Bylaws"). *See* **Exhibit B,** a true and accurate copy of the Bylaws.

17. Further, the Medical Staff at the Hospital organizes itself for self-governance in conformity with the laws, regulations and policies governing the Department of Veterans Affairs, Veterans Health Administration ("VHA"), as well as the Bylaws and associated Rules.

### *The Administrative Investigation Board ("AIB") Inquiry*

18. On or around August 29, 2024, an Administrative Investigation Board ("AIB") was appointed to conduct an administrative investigation regarding the clinical care concerns raised in the Summary Suspension Notice.

19. Pursuant to Article IX of the Bylaws, whenever there are concerns that a practitioner has demonstrated substandard care, professional (clinical) misconduct, or professional (clinical) incompetence, the Chief of the Practitioner's clinical service, the Chief of Staff, or the Medical Center Director may initiate a preliminary fact-finding. *See* **Exhibit B,** at Article IX, Section 1.

20. Further, when the above-referenced concerns are raised, further review may result in a fact-finding or administrative investigation. *Id.,* Article IX, Section 2.

21. The process for Administrative Investigation Boards are governed by VA Handbook 0700 – Administrative Investigation Boards and Factfindings, effective August 17, 2021. *See* **Exhibit C,** a true and accurate copy of VA Handbook 0700.

22. An AIB investigation is "a type of administrative investigation under VA Directive 0700…for collecting and analyzing evidence, ascertaining facts and documenting complete and accurate information regarding matters of interest to the VA. This type of administrative investigation requires the most documentation and has substantial procedural requirements." *Id.,* Chapter 1, Section 2(b).

23. Once the AIB is convened, a "Charge Letter" is issued which formally appoints the members of the AIB Panel ("AIB Panel") and defines the scope of the investigation. *Id.,* Chapter 3, Section 3.

24. After the investigation is conducted, which can include witness interviews, the AIB prepares an AIB Investigative Report ("AIB Report"). *Id.*, Chapter 7, Section 1.

25. The AIB Report sets forth the AIB Panel's findings of fact, conclusions, and evidence upon which the findings are based. *Id.,* Section 2-3.

26. The AIB Panel has authority to make findings of fact and conclusions, and provide recommendations about a proposed outcome (if authorized by the Charge Letter). *Id.,* Chapter 3, Section 6.

27. During the investigation, Dr. Jabbar and twelve witnesses, were interviewed by the AIB Panel.

28. The AIB is an *ex parte* proceeding and the practitioner under investigation is not permitted to be present for the investigative process or the interviews conducted by the AIB Panel.

### The Notice of Proposed Revocation of Privileges

29. On or around January 14, 2025, Dr. Jabbar received a Notice of Proposed Revocation of Privileges ("Notice of Proposed Revocation") from the Chief of Staff, Clint Connor, M.D. ("Chief of Staff").

30. The Notice of Proposed Revocation informed Dr. Jabbar that the Professional Standard Board ("PSB"), a Subcommittee of the Executive Committee of the Medical Staff ("ECMS"), recommended that his clinical privileges be revoked based on findings of the AIB Report.

31. Further, the Notice of Proposed Revocation provides that if the recommended decision is implemented, Dr. Jabbar will be provided with the right to a Fair Hearing.

32. On or around February 26, 2025, the Executive Director of the Medical Center, Zachary M. Sage, issued his Decision on the Proposed Revocation of Privileges ("Director's Decision").

33. The Director's Decision upheld the revocation and notified Dr. Jabbar of his right to request a Fair Hearing within five business days.

34. Dr. Jabbar submitted a timely request for a Fair Hearing.

### *Hearing and Appeal Rights Under the Bylaws and VA Privileging Directive*

35. The Bylaws in effect during the relevant time period were approved on May 31, 2024. *See* **Exhibit B.**

36. The Bylaws are contractual in nature and establish the rights and obligations of the Hospital and members of the Medical Staff. As part of the consideration for the use of the Hospital's facilities, the Bylaws set forth the Medical Staff's obligation to ensure quality medical care, endeavor to provide a high level of professional performance, and to supervise enforcement of the Hospital's Rules and Regulations. Additionally, the Bylaws provide the process and conditions under which the Hospital is permitted to conduct professional review and take corrective action.

37. A professional review action is generally a recommendation or action by a hospital or health care entity related to "substandard care, professional misconduct, or professional incompetence" of a physician that adversely affects the clinical privileges or membership of the physician (*e.g.,* revocation of privileges, denial of appointment and/or reappointment; reduction in clinical privileges for greater than 30 calendar days; resignation; surrender of privileges, or

acceptance of privilege reduction during an investigation or to avoid an investigation). *Id.*, at Article IX; 45 C.F.R. § 60.3.

38. A revocation of clinical privileges, as set forth in the Director's Decision, is a professional review action under the Bylaws and 45 C.F.R. § 60.3.

39. Article X of the Bylaws and VHA Privileging Directive 1100.21 (Standard Operating Procedure P27), govern a practitioner's fair hearing and appellate review rights when an adverse action is taken.

40. Pursuant to the Bylaws, a proposed action to revoke a practitioner's privileges must be made in accordance with VHA Directive 1100.21(1), SOP-P27 (hereinafter referred to as "VA Privileging Directive"). *See* **Exhibit B,** Article X, Section 10.02.

41. The VA Privileging Directive outlines the Fair Hearing process for adverse privileging actions taken against Title 38 Privileged Practitioners, including revocation of privileges. *See* **Exhibit D,** a true and accurate copy of the VA Privileging Directive, effective December 5, 2023.

42. If the practitioner does not agree with the privileging action, a request for hearing must be submitted within five (5) business days after receipt of the final decision letter from the Medical Center Director. *Id.,* Section 2(c)(5).

43. If a fair hearing is requested, the Medical Center Director must appoint a review panel of three professionals to conduct a review and hearing on the privileging action. *Id.,* Section 2(c)(6).

44. During the Fair Hearing, the practitioner has the right to: (1) be present throughout the evidentiary proceedings; (2) be represented by an attorney…; (3) if the practitioner is represented, this individual is allowed to act on behalf of the practitioner including questioning

and cross-examination of witnesses; (4) receive all evidence relied upon in bringing the privileging action; (5) present evidence including calling witnesses; and (6) cross-examination of witnesses. *Id.,* Section 2(c)(7).

### *Fair Hearing*

45. On March 17, 2025, a Notice of Fair Hearing was issued, appointing a three-person panel (hereinafter referred to as the "Panel") to conduct a hearing on the Director's Decision on April 14, 2025.

46. The Fair Hearing was subsequently continued to and conducted on July 28, 2025.

47. During the course of the Fair Hearing the following occurred:

(a) The Panel refused to provide Dr. Jabbar with *any* medical records associated with the Procedures, in violation of his due process rights;

(b) The AIB Panel and Fair Hearing Panel both failed to request or review the medical records associated with the Procedures. As such the decisions rendered by the AIB Panel and the Fair Hearing Panel, which included findings about Dr. Jabbar not meeting the standard of care, cannot be based on substantial evidence;

(c) The admission of hearsay statements from various first-hand occurrence witnesses who were involved in the Procedures was improper, violated Dr. Jabbar's right to cross-examination of witnesses, his right to a fair hearing under the Bylaws and due process, and resulted in great prejudice to Dr. Jabbar since their alleged firsthand observations were not permitted to be challenged by Dr. Jabbar;

    (d) The findings in the Final Decision are not supported by substantial evidence, as Dr. Jabbar presented evidence showing that the standard of care was met in each case and that the concerns of OR staff were baseless and improperly opined on issues outside of their scope of practice;

    (e) The Panel Report and Director's Decision improperly considered evidence that was not introduced by Dr. Jabbar at the Fair Hearing;

    (f) The Panel Report made ancillary findings that were not contained in the AIB Report or the Proposed Notice of Revocation;

    (g) The Panel failed to consider any of the evidence or testimony presented by Dr. Jabbar's witnesses during the Fair Hearing and does not mention them in its Report;

    (h) The discipline of revocation of clinical privileges was harsh and excessive in light of the evidence and mitigating factors.

48. On August 12, 2025, the Panel issued their Report and Recommendation ("Panel Report") from the Fair Hearing, which upheld the recommendation for revocation of privileges.

49. On or around August 18, 2025, the Executive Director, issued a decision upholding the Panel's decision to revoke Dr. Jabbar's privileges.

50. The Director's Decision made improper findings regarding two colonoscopy procedures conducted by Dr. Jabbar, on August 12, 2024 and a Port-a-Cath placement on August 16, 2024 (collectively, the "Procedures").

51. Dr. Jabbar submitted an appeal of the August 18, 2025 Director's Decision to the VISN 15 Director.

52. On or around September 22, 2025, the VISN 15 Director issued a Final Decision upholding the revocation of Dr. Jabbar's privileges. *See* **Exhibit A.**

## COUNT I – JUDICIAL REVIEW

53. Dr. Jabbar repeats and realleges the allegations set forth in Paragraph 1 through 52 above, as if fully set forth herein.

54. Upon judicial review by a District Court, the Final Decision regarding revocation of Dr. Jabbar's clinical privileges may be reversed when it is found to be: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (f) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. *See* 5 U.S.C. § 706.

55. Here, the Final Decision, as recommended by the Fair Hearing Panel, must be reversed as it is violative of 5 U.S.C. § 706, as well as due to the following reasons:

(a) The Panel refused to provide Dr. Jabbar with *any* medical records associated with the Procedures, in violation of his due process rights;

(b) The AIB Panel and Fair Hearing Panel both failed to request or review the medical records associated with the Procedures. As such the decisions rendered by the AIB Panel and the Fair Hearing Panel, which included findings about Dr. Jabbar not meeting the standard of care, cannot be based on substantial evidence;

(c) The admission of hearsay statements from various first-hand occurrence witnesses who were involved in the Procedures was improper, violated Dr. Jabbar's right to cross-examination of witnesses, his right to a fair hearing under the Bylaws and due process, and resulted in great prejudice to Dr. Jabbar since their alleged firsthand observations were not permitted to be challenged by Dr. Jabbar;

(d) The findings in the Final Decision are not supported by substantial evidence, as Dr. Jabbar presented evidence showing that the standard of care was met in each case and that the concerns of OR staff were baseless and improperly opined on issues outside of their scope of practice;

(e) The Panel Report and Director's Decision improperly considered evidence that was not introduced by Dr. Jabbar at the Fair Hearing;

(f) The Panel Report made ancillary findings that were not contained in the AIB Report or the Proposed Notice of Revocation;

(g) The Panel failed to consider any of the evidence or testimony presented by Dr. Jabbar's witnesses during the Fair Hearing and does not mention them in its Report;

(h) The discipline of revocation of clinical privileges was harsh and excessive in light of the evidence and mitigating factors.

## PRAYER FOR RELIEF

The Plaintiff, Mohammad Jabbar, M.D., respectfully requests that this Honorable Court reverse the decision to revoke his clinical privileges, award him reasonable attorneys' fees and costs in bringing this action; and any further relief this Honorable Court deems just and proper.

Dated: December 8, 2025

                                                      Respectfully Submitted,
                                                      MOHAMMAD JABBAR, MD

                                                      By:   */s/ Michael K. Goldberg*

Michael K. Goldberg
Goldberg Law Group, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, Illinois 60606
(312) 930-5600
mike@goldberglawoffice.com